UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$21,836 IN U.S. CURRENCY,

    Defendant.

Case No. _____ \_\_\_\_

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The plaintiff, United States of America, through its attorneys Andrew M. Luger, United States Attorney for the District of Minnesota, and Craig R. Baune, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America $21,836 in U.S. Currency for violations of 21 U.S.C. § 841 *et seq.*

### THE DEFENDANT *IN REM*

2. The defendant *in rem* is $21,836 in U.S. Currency seized from Travis James Metcalfe at the Minneapolis/St. Paul International Airport ("MSP") on February 3, 2023. The defendant *in rem* is in custody of the United States Marshals Service.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant $21,836 in U.S. Currency ("the Defendant Currency"). This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant Currency under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, the Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendant Currency pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant Currency is located in this District.

## FACTS

6. On or about February 3, 2023, the Minneapolis/St. Paul International Airport Police ("APD") and members of the Drug Enforcement Administration ("DEA") received information from a Confidential Source ("CS") regarding a suspicious travel itinerary for Travis James Metcalfe ("Metcalfe").

7. According to the CS, Metcalfe purchased airfare on Sun Country on February 2, 2023 for a flight departing on February 3, 2023 from Minneapolis/St. Paul International

Airport ("MSP") to Los Angeles International Airport ("LAX") and returning on February 6, 2023.

8. Los Angeles is considered a source city, and California is considered a source state, for the production of narcotics. People involved in trafficking narcotics and narcotics proceeds commonly purchase airline tickets at the "last minute." Often, they believe they will avoid law enforcement if they wait until the last minute to purchase their airfare. In some cases, they don't know ahead of time when they will have collected all of the drug proceeds to bring to the narcotics source. In other cases, they don't know ahead of time when the narcotics will be ready to be retrieved.

9. An APD detective utilizing a certified narcotics-detection canine, was conducting open-air sniffs of persons and carry-on luggage between a MSP Terminal 2 security checkpoint and Metcalfe's departure gate. The detective who was handling the canine communicated to the enforcement team that his canine made a positive alert to Metcalfe as he walked past. The canine alerts to the odor of controlled substances.

10. Metcalfe was approached by officers after exiting a Terminal 2 restroom. The officers explained that a canine had made a positive alert to Metcalfe's person or carry-on bag and asked if he would be willing to talk to investigators. Metcalfe agreed to talk to them.

11. Metcalfe stated that he was flying out to Los Angeles to see a girlfriend. Metcalfe told officers that he had packed his gray duffel gym bag himself and did not have any prohibited items within the bag. Metcalfe then agreed to allow the officers a search of the bag.

12. Inside the gym bag, an APD Detective discovered very few clothes, but tucked inside a pair of jeans were large folded over wads of U.S. Currency. The officers asked Metcalfe about the large amount. Metcalfe estimated that he had about $22,000 dollars. When asked about currency, Metcalfe stated that he was going to check out a car in California.

13. The Detective asked if the money had come from a bank. Metcalfe responded, "yeah." Metcalfe also told the Detective that he owned his own HVAC business.

14. A Special Agent from the DEA separated the U.S. Currency from the gym bag and collected the currency seized from Metcalfe. He laid it on the floor to allow the canine an opportunity to check it. The canine made a positive alert to the presence of narcotics on the collected currency.

15. A later count of the currency revealed a total $21,836, composed of: 218 100-dollar bills, 1 20-dollar bill, 1 10-dollar bill, 1 5-dollar bill, and 1 1-dollar bill.

16. Metcalfe was asked if he could provide any further information about his business. Metcalfe used his phone to show the officers a Facebook page. The Facebook page appeared to be a personal account, listing Metcalfe as from Amsterdam and as a graduate of Harvard University. The most recent post appeared to be a TikTok video of an unconscious man urinating on himself. When a DEA Agent asked about it, Metcalfe admitted that he made the page when he was thirteen.

17. The Officers then asked if Metcalfe had anything else that showed information about the car he stated he was going to see or from the source side of things,

any tax information, banking, hand receipts, or anything else to show that the currency was legitimately earned.

18. Metcalfe told officers that he files taxes and banks with Superior Choice Credit Union but did not have access to show any records.

19. He also told officers that he had no further information regarding the planned car purchase. He had no information to provide about the seller, the make, model, or anything else related to the car.

20. At the end of the interview, the Officers explained that based on the positive alerts to the large amount of US Currency and to his person and the lack of plausible source of funds, the DEA would be seizing the currency. The Officers explained the process to Metcalfe. Metcalfe then chose not to board his flight to California and departed the terminal.

21. Based on the foregoing, DEA commenced administrative forfeiture proceedings for the seized currency.

22. Metcalfe challenged the administrative forfeiture of the Currency, which automatically stopped the administrative forfeiture. The DEA referred the case to the U.S. Attorney's Office for the District of Minnesota.

23. Investigation revealed no evidence that Metcalf was operating a legitimate enterprise that produced income sufficient to have generated the $21,836 of currency seized from him.

24. Although Metcalfe registered a business under the name Northwoods Heating & Air Conditioning, LLC in 2019, the registration became delinquent in April

2022. Investigators discovered Metcalfe registered two other LLCs with the state of Wisconsin, Lakeside Heating and Air Conditioning LLC in August 24, 2022 and OUT-N-ABOUT LLC in May 4, 2022.  Lakeside Heating and Air Conditioning LLC did have a webpage but no other information was found other than Metcalfe's personal cell phone number on the site. There was little to no information found regarding OUT-N-ABOUT LLC or the nature of the business.

25.     A review of all known personal and business bank records associated with Metcalfe's name and business accounts revealed relatively few transactions that could have been related to HVAC or related work. Instead, the vast majority of transactions shown in the Northwoods account appear to be personal expenditures, such as bars, casinos or personal travel. In addition, deposits into that account were frequently in round numbers, including multiple deposits on the same date, in the same amount, at different bank branches across the Duluth/Superior area. The relatively few transactions at hardware stores or similar locations were generally for relatively low dollar amounts inconsistent with significant projects.

26.     These banking records are more consistent with deposit of narcotics proceeds and personal expenditures than of a legitimate business venture like the HVAC company Metcalfe asserted was the source of the currency. Moreover, they do not suggest that the defendant $21,836 was withdrawn from those accounts prior to the seizure.

## BASIS FOR FORFEITURE

27.     The allegations in the preceding paragraphs are re-alleged and incorporated by reference.

6

28.     The defendant $21,836 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.

## CLAIM FOR RELIEF

29.     The plaintiff requests that the Court issue a warrant for the arrest and seizure of the Defendant *in rem*, that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant *in rem*, that the Defendant *in rem* be forfeited and condemned to the United States of America, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

Dated: July 19, 2023                                ANDREW M. LUGER
                                                    United States Attorney

                                                    *s/ Craig R. Baune*

                                                    BY:  CRAIG R. BAUNE
                                                    Assistant U.S. Attorney
                                                    Attorney ID No. 331727
                                                    600 United States Courthouse
                                                    300 South Fourth Street
                                                    Minneapolis, MN 55415
                                                    Phone:  612-664-5600
                                                    Craig.baune@usdoj.gov

## VERIFICATION

I, Michael H. Cohen, verify and declare under penalty of perjury as follows:

I am a DEA Special Agent with the U.S. Drug Enforcement Administration ("DEA"). I have been a Special Agent since 2015. Over 8 years, I have had significant experience with narcotics investigations, interdictions and narcotics related casework. I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and Officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and Officers, as well as my investigation of this case, together with others, as a DEA Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: July 18, 2023               *s/ Michael H. Cohen*
                                   MICHAEL H. COHEN
                                   U.S. Drug Enforcement Administration
                                   Special Agent